DOMENGEAUX, Judge.
Plaintiff C. Edward Karst brings this appeal from a judgment dismissing his action which attacked a judgment which had been previously rendered against him.
Karst originally filed suit against Joe E. Fryar seeking a money judgment on the basis of a settlement agreement and other business activities allegedly entered into between himself and Fryar. Fryar, alleging that the settlement agreement was obtained through fraud, reconvened, and demanded the return of all monies paid to plaintiff as a result of the settlement agreement. Fryar also filed a separate action demanding essentially the same relief sought in his reconventional demand. The actions were consolidated for trial.
Following trial of the actions, the district judge, Guy E. Humphries, Jr., finding that Karst had committed fraud and extortion in obtaining the settlement agreement, rendered judgment in favor of plaintiff-in-re-convention, Fryar, in the sum of $139,-206.00.
Karst perfected an appeal to this Court contending that the trial judge erred in finding that he had committed fraud and extortion in obtaining the settlement agreement. This Court, finding that the record amply supported the trial judge’s findings, affirmed the judgment rendered below. Karst v. Fryar, 361 So.2d 1344 (La.App.3rd Cir.1978).
Subsequently, in August 1978, Karst filed the instant action to annul the aforementioned judgment rendered against him. The petition alleged that the original judgment had been obtained through the fraudulent and ill practices of Judge Humphries, Joe A. Fryar and Fryar’s attorney, J. Minos Simon.
During the course of the proceedings, Karst filed a motion for summary judgment alleging that Judge Humphries, or his court reporter, had altered the transcript of the original trial. He contended that the alterations constituted an “ill practice” requiring *240 a nullification of the judgment. Fryar also filed a motion for summary judgment seeking dismissal of the nullity action. In support of his motion for summary judgment, Fryar submitted affidavits from his attorney, J. Minos Simon, and Judge Humphries which denied the allegations of fraud and ill practices.
Following a hearing on the motions, the trial judge granted Fryar’s motion for summary judgment and dismissed Karst’s action with prejudice. Karst has perfected this appeal from the court’s ruling.
Appellant makes two assignments of error. He contends that the trial court should have granted his motion for summary judgment on the grounds that the trial transcript in the original action had been editorialized in contravention of La.C.C.P. Art. 372. Secondly, he contends that the trial judge erred in granting defendant’s motion for summary judgment.
ASSIGNMENT OF ERROR #1
Plaintiff alleges that Judge Hum-phries or his court reporter altered the transcript of the trial. He urges that the alteration of the transcript was a violation of La.C.C.P. Art. 372 constituting an “ill practice” requiring the nullification of the judgment.
La.C.C.P. Art. 372 provides in pertinent part:
“The court reporter of a trial court, when directed by the court, shall report verbatim in shorthand by stenography or sten-otype, or by voice recording or any other recognized manner when the equipment therefor has been approved by the court, the testimony of all witnesses, the other evidence introduced or offered, the objections thereto, and the rulings of the court thereon, on the trial of any appealable civil case or matter.
When the court so directs, or the fees therefor have been paid or secured, or when an appeal has been granted in cases in which a party has been permitted to litigate without the payment of costs, he shall transcribe verbatim in a manner approved by the supreme court, all of his notes taken at the trial, or such portion thereof as is designated. He shall file one copy of the transcript in the trial court; shall deliver a copy thereof to each of the parties who has paid therefor; and, when an appeal has been granted, he shall furnish to the clerk of the trial court the number of copies of the transcript required by law.”
The article requires a verbatim transcription of all notes taken at the trial. An examination of the record reveals that the court proceedings were not transcribed verbatim. Ms. Virginia Biggers, Chief Examiner of Court Reporters for the State of Louisiana, stated in an affidavit that the transcript of the oral reasons for judgment is not a verbatim record of the reasons as they appear on tape.
The trial judge, in rejecting plaintiff’s motion for summary judgment, made the following finding:
“With regard to alterations in the Oral Reasons for Judgment, Judge Humphries declared in his affidavit that ‘he did not change the substance of the oral reasons for judgment but did make corrections for grammar, sentence structure and paragraph structure and matters of that nature.’ The excerpts from the Oral Reasons bear out his statement. The changes noted on the excerpts were for the most part grammatical. For example, on page 2376 ‘wouldn’t’ became ‘would not’ and ‘didn’t’ became ‘did not’. There were a few instances where words were omitted or added, but those modifications did nothing to change the substances of the oral reasons. For example, on page 2689 appears the sentence ‘Mr. Fryar contends that it is because it was based on extortion.’ rather than ‘Mr. Karst, I mean, Mr. Fryar contends that it is because it was based on extortion.’ A study of all the relevant documents on file demonstrates that there is no genuine issue of material fact that certain words and phrases were placed in capitals, italics and quotation marks; that the transcript does not go to the bottom of each page; and that certain changes were *241 made in the Oral Reasons for judgment. Those facts do not, however, entitle plaintiff Karst to judgment as a matter of law. The use of italics, capitals and quotation marks do not change the substance of the testimony. The Court does not believe that the Court of Appeal was or would be influenced by the style or type used to transcribe a proceeding. Similarly, the changes made in the Oral Reasons did not alter their substance or their meaning in any way. Under these circumstances, Karst’s motion for summary judgment must be denied.”
After a careful examination of the record, we find no error in the trial court’s judgment rejecting appellant’s motion for summary judgment. Any alterations which appear in the record do not affect the substance of the transcript. Such alterations, do not constitute “ill practices” requiring the nullification of the judgment.[1]
ASSIGNMENT OF ERROR #2
Appellant contends that the trial judge erred in granting defendant’s motion for summary judgment because genuine issues of material fact remain for resolution at trial.
La.C.C.P. Art. 966 provides:
“The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff’s motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. As amended Acts 1966, No. 36, § 1.”
Plaintiff’s petition for nullity alleges that the original judgment was obtained by fraudulent and ill practices perpetrated by Judge Humphries, Fryar, and Fryar’s counsel. In support of this contention, plaintiff alleges that Judge Humprhies was biased and prejudged the case; that Joe Fryar and J. Minos Simon, his attorney, bribed or blackmailed Judge Humphries into rendering the judgment, and that certain witnesses committed perjury at the trial of the case.
Defendant, in support of his motion for summary judgment, filed affidavits from Judge Humphries and J. Minos Simon denying the allegations of fraud. Simon stated that he did not bribe, blackmail or otherwise corrupt Judge Humphries into rendering any decision against Karst. Fryar stated that he did not bribe, blackmail or influence Judge Humphries in any litigation involving Edward Karst. In his affidavit, Judge Humphries denies prejudging the case or being bribed, blackmailed or corrupted.
Concerning Fryar’s motion for summary judgment, we quote with approval the trial judge’s reasons for granting same, as follows:
Karst alleges that Judge Hum-phries threatened him while he was on the witness stand, saying, ‘You better settle this case.’ Judge Humphries refutes that allegation in his affidavit. While there is an issue of fact as to whether or not Judge Humphries did make that statement, the issue is not material to the present suit. Even if Judge Humphries made that statement, it does not fall into the category of fraud or ill practices such as would change the outcome of the prior lawsuit.
*242 Karst alleges that Judge Humphries pre-judged the case. In his deposition, taken August 18, 1979, Karst stated that it is a ‘logical inference from the facts’ as they developed in the original lawsuit that Judge Humphries pre-judged the case. (Dep., p. 102).
With regard to the [sic] Karst’s allegation that Joe Fryar or Fryar’s attorney Simon bribed, blackmailed or otherwise corrupted Judge Humphries into rendering the disputed judgment, Karst, in the deposition taken March 9, 1979, stated that ‘it’s just a matter of logical inference’ that Judge Humphries was bribed, blackmailed or corrupted. (Dep., pp. 2, 11). He further declared that ‘the record is replete with sufficient facts to establish to a reasonable person that such a thing did occur,’ (Dep., p. 2) and ‘I can’t imagine Guy Humphries making the findings he did unless he was so bribed, blackmailed or otherwise corrupted.’ (Dep., p. 9).
In his affidavit Judge Humphries denies prejudging the case and being bribed, blackmailed or corrupted. Fryar and his attorney, Simon, also deny the bribery, blackmailing and corrupting. The law requires a plaintiff alleging such matters as fraud to specifically plead the facts involved.[2] Karst has failed to do so. He alleges only the conclusions that Judge Humphries prejudged the case and was bribed, blackmailed or corrupted. ‘A logical inference’ is not a factual averment; it is a conclusion. A reading of the pleadings, depositions and affidavits show that Karst has alleged no facts but only conclusions. Therefore, there is no genuine issue of material fact.
Furthermore, if, as Karst contends, the fraud is evident from the record, then he had the opportunity to present those matters on appeal. He does not contend that he was prevented by some artifice from presenting those matters to the Court of Appeal. Rather, he stated in his deposition dated March 9, 1979, ‘That’s mot to say that the facts weren’t out there. I hadn’t put them together, that’s all.’ (Dep., p. 48).
Karst alleges that Joe E. Fryar, David Sheffield and Nola Powers Shattuek committed perjury during the trial of Karst v. Fryar, No. 97,685 and Fryar v. Karst, No. 97,699.[3] However, Karst admitted in his depositions that he was aware at the time those three people testified that they were lying. He stated that the trial record itself demonstrates Shattuck’s and Sheffield’s perjury. He declared ‘it’s logically impossible, to my way of thinking .. . for Sheffield ... or for Nola Shad-dock to have been telling the truth.’
Karst also claims that some of the evidence that would have shown Fryar lied was excluded at the trial. However, he admits raising that issue on appeal. He admits presenting the credibility issue to the trial court. He contends in his deposition to have some HUD documents which will prove Fryar lied. However, he also admitted thinking of the possibility of using those documents before trial, discussing them with someone (referred to as ‘they’) and having those persons go talk to the HUD people.
Such baseless, conclusory assertions as these do not suffice to create a genuine issue of fact. Furthermore, Karst knew the (alleged false) testimony was false. He had the opportunity to attack the testimony in court, and if, as he claims, the perjury is a matter of record, he had the opportunity to present it on appeal. One seeking to annul a judgment obtained through prejured evidence must allege that he did not know at the time that the evidence was false, or if he knew, that he did not have the means or opportunity at the time to contradict it. Cryer v. Cryer, 70 So.2d 752 ([La.App.] 1st Cir.1954); LeBlanc v. LeBlanc, 162 So.2d 838 ([La.App.] 1st Cir.1964).
*243 Karst contends that Judge Humphries ‘interjected’ himself in the case of State of Louisiana v. John Snyder, that he ‘involved’ himself in the case of Reynolds v. Reynolds, and that he ‘usurped’ the case of Karst v. Carlson from another judge. Judge Humphries denies doing these things. While there is arguably a question of fact, the issue is not material to the present suit. There are no factual allegations linking such action to the procurement of the disputed judgment.
Similarly, the allegations that Judge Humphries has committed public payroll fraud and has solicited funds for his son to play professional golf have nothing to do with the issue in the present lawsuit, that is, whether the judgment was obtained by fraud and ill practices.
Karst also contends that Judge Hum-phries prevented his taking the deposition of one J. Douglas Nesom. He states in his deposition dated August 18,1979, that he was present when his attorney, Boren, was taking Nesom’s deposition. Nesom refused to answer some questions, claiming the attorney-client privilege. Boren called Judge Humphries on the phone to get a ruling ordering Nesom to answer the questions. Judge Humphries refused to order Nesom to respond to the questions. Karst claims that ‘the whole bit about taking the deposition of J. Douglas Nesom is highly questionable’ and casts ‘serious questions upon the integrity of the Court and the integrity of the proceedings [sic]. (Dep., p. 106).
Here again Karst has made unsubstantial contentions rather than allegations of fact.
After giving due consideration to the pleadings, depositions, affidavits and other documents on file, the Court concludes that there is no genuine issue of fact material to the present suit. A judgment can not be reopened each time a litigant makes mere conclusory allegations of impropriety. He must set forth facts, not merely matters of inference, conjecture, belief or suspicion. Public policy demands that there be finality and permanency to judgments. Furthermore, the Court is convinced that plaintiff is seeking to relitigate the issues of the original lawsuit. Such is not the purpose of the action to annul. Defendant Fryar is entitled to judgment rejecting plaintiff’s demand for annullment as a matter of law.”
Our review of the pleadings in this case and all documents in connection with Fryar’s motion for summary judgment, and particularly the deposition of Karst, together with the record of the original cases which are reported at 361 So.2d 1344 and 1347, and also the trial judge’s reasons for judgment quoted above, leads us to conclude that summary judgment in favor of defendant was properly granted.
For the above and foregoing reasons, the judgment of the District Court denying summary judgment in favor of plaintiff, C. Edward Karst, and the granting of summary judgment in favor of defendant, Joe E. Fryar, is affirmed.
All costs to be assessed against C. Edward Karst.

AFFIRMED.

. Although not the case here, a trial judge may sign a judgment based on written reasons which differ substantially from previously stated oral reasons. Margan v. Precision Motors, Inc., 317 So.2d 664 (La.App.4th Cir.1975).

2. Footnote by Court of Appeal. La.C.C.P. Art. 856 mandates that the circumstances constituting fraud or mistake be alleged with particularity.

3. Footnote by the Court of Appeal. Those cases are the ones previously affirmed by this Court at 361 So.2d 1344 and 1347.